In re Grand Jury Subpoena For: William Lathan OSTERHOUDT, Luxana Phaksuan.

Luxana PHAKSUAN, Movant-Appellant,

v.

UNITED STATES of America, Appellee.

No. 83–5807.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1983.

Decided Dec. 30, 1983.

**592**

John W. Keker, Keker & Brockett, San Francisco, Cal., for movant-appellant.

Bruce R. Castetter, Asst. U.S. Atty., argued, Peter K. Nunez, U.S. Atty., Bruce R. Castetter, Asst. U.S. Atty., on the brief,

Before BROWNING, Chief Judge, NORRIS, Circuit Judge, and SCHNACKE,* District Judge.

* Honorable Robert H. Schnacke, District Judge, United States District Court for the Northern District of California, sitting by designation.

**PER CURIAM:**

The district court properly denied appellant's motion to quash the grand jury subpoena directed to his attorney.

The government stipulated that only the amount, form, and date of payment of legal fees need be disclosed. Appellant recognizes that generally "[t]he identity of an attorney's clients and the nature of his fee arrangements with his clients are not confidential communications protected by the attorney-client privilege." *United States v. Hodge & Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977). *See also In re Grand Jury Subpoenas (Lahodny)*, 695 F.2d 363, 365 (9th Cir.1982); *In re Grand Jury Witness (Salas & Waxman)*, 695 F.2d 359, 361 (9th Cir. 1982); *United States v. Sherman*, 627 F.2d 189, 190 (9th Cir.1980). He argues, however, that the subpoena fell within an exception to this general rule barring disclosure where "a strong probability exists that disclosure of such information would implicate that client in the very criminal activity for which legal advice was sought." *Hodge & Zweig*, 548 F.2d at 1353.

Appellant contends the exception applies in this case because he hired the attorney to represent him in a grand jury investigation of possible income tax and controlled substance violations, and the government represented in an affidavit filed with the court below that (1) the grand jury inquiry was based upon information that appellant was a "major distributor of several multi-ton loads of marijuana" in 1976, 1980 and 1981 from which he had made "substantial sums of money"; (2) that "a complete financial investigation" of appellant was relevant to the grand jury's inquiry; and (3) that the information regarding the date and amount of legal fees paid by appellant was necessary to complete that investigation.

Appellant's argument rests on the premise that the requisites of the privilege are met whenever evidence regarding the fees paid the attorney would implicate the

client in a criminal offense regarding which the client sought the attorney's legal advice. That is not the law.

■ The purpose of the attorney-client privilege is to protect every person's right to confide in counsel free from apprehension of disclosure of confidential communications. *United States v. Sherman,* 627 F.2d at 192; *Baird v. Koerner,* 279 F.2d 623, 629–30 (9th Cir.1960). Fee arrangements usually fall outside the scope of the privilege simply because such information ordinarily reveals no confidential professional communication between attorney and client, and not because such information may not be incriminating.

■ In *Chirac v. Reinicker,* 24 U.S. (11 Wheat.) 280, 6 L.Ed. 474 (1826), an attorney objected to the question whether he was employed as counsel to conduct an ejectment suit for the benefit of Reinicker, as landlord of the premises. The Court held:

> The fact [of representation] is preliminary, in its own nature, and establishes only the existence of the relation of client and counsel, and therefore, might not necessarily involve the disclosure of any *communication* arising from that relation, after it was created.

*Id.* at 295 (emphasis added). The same rationale applies to the fee arrangement. *See In re Michaelson,* 511 F.2d 882, 888 (9th Cir.1975). Information regarding the fee arrangement ordinarily is not part of the subject matter of the professional consultation and therefore is not privileged communication even though it may evidence wrongdoing by the client. *See United States v. Sherman,* 627 F.2d at 191–92.

Cases recognizing the exception to the general rule that the client's identity and the amount of the fee paid the attorney are not within the privilege rely upon *Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960). Appellant's confusion as to the meaning of the exception is based upon a misstatement of the *Baird* rule in subsequent opinions. *See, e.g., In re Grand Jury Subpoenas (Lahodny),* 695 F.2d at 365; *In re Grand Jury Witness (Salas & Waxman),* 695 F.2d at 361–62; *United States v. Hodge & Zweig,* 548 F.2d at 1353.

In *Baird* the client had engaged the lawyer for advice in tax matters and, on the attorney's recommendation, had anonymously tendered to the United States Treasury through the attorney sums due for unpaid taxes. The government sought disclosure of the client's name. This court held the general rule that the identity of the client was not protected by the attorney-client privilege was inapplicable. The exception to the general rule stated in *Baird* was that the identification of the client was not within the privilege when the identification "conveys information which ordinarily would be conceded to be part of the usual *privileged communication* between attorney and client." *Id.* at 632 (emphasis added). As an illustration of this principle (and one on all fours with the facts of *Baird* ), the court quoted the following passage from 97 C.J.S. Witnesses, § 283e, at 803:

> The name of the client will be considered privileged matter where the circumstances of the case are such that the name of the client is material only for the purpose of showing an *acknowledgment* of guilt on the part of such client of the very offense on account of which the attorney was employed . . . .

279 F.2d at 633 (emphasis added).

*Hodge & Zweig* and other subsequent cases have mistakenly formulated the exception not in terms of the principle itself, but rather in terms of this example of circumstances in which the principle is likely to apply. The principle of *Baird* was not that the privilege applied because the identity of the client was incriminating, but because in the circumstances of the case disclosure of the identity of the client was in substance a disclosure of the confidential communication in the professional relationship between the client and the attorney. *See generally* 8 J. Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961).

Another source of the confusion may be that applying the label "general rule" to the doctrine that client identity and fee ar-

rangements must be disclosed has distracted attention from the fact that the governing principle is that only professional communications are privileged. The case upon which *Baird* relied, *Ex parte McDonough,* 170 Cal. 230, 149 P. 566 (1915), did not speak in terms of the "general rule" and its "exception" but rather whether the facts disclosed the presence of the requisites of the privilege: a confidential communication:

> [T]he identity of the attorney's client . . . will seldom be a matter that can be held, under the law, to have been *communicated in confidence.* The mere fact of retaining an attorney to act as such is not ordinarily a matter occurring in the course of the confidential relation of attorney and client, but is something that precedes the establishment of that relation.

*Id.* at 235 (emphasis added).

*Colton v. United States,* 306 F.2d 633, 637 (2d Cir.1962), properly cites *Baird* for its true principle:

> [T]he authorities are clear that the privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence. Thus the identity of a client, or the fact that a given individual has become a client are matters which an attorney normally may not refuse to disclose, even though the fact of having retained counsel may be used as evidence against the client . . . . To be sure, there may be circumstances under which the identification of a client may amount to the prejudicial disclosure of a confidential communication, as where the substance of a disclosure has already been revealed but not its source.

*See also Tillotson v. Boughner,* 350 F.2d 663, 666 (7th Cir.1965).

■ Nothing in the circumstances of this case suggests that disclosure of the amounts and dates of payments of fees by appellant to his attorney would in any way convey the substance of confidential professional communications between appellant and his attorney. Accordingly, in this case this information is not protected by the attorney-client privilege.

Appellant also argues that enforcement of the subpoena "would violate fundamental rights guaranteed by the Fifth and Sixth Amendments to the Constitution." He contends that compelling an attorney to provide evidence against his client is destructive of the trust and confidence essential to the relationship and may create a conflict of interest requiring the attorney to sever the relationship, thus denying the client counsel of his choice. At a minimum, appellant argues, enforcement of the subpoena should be conditioned upon a showing by the government that the information sought is relevant, is needed, and cannot be obtained from another source, citing *In re Grand Jury Proceedings (Schofield),* 486 F.2d 85 (3d Cir.1973), and *In re Special Grand Jury No. 81-1 (Harvey),* 676 F.2d 1005, *vacated,* 697 F.2d 112 (4th Cir.1982).[1] Finally, the National Association of Criminal Defense Lawyers Inc. and California Attorneys for Criminal Justice, appearing as amici curiae, suggest that a hearing is required to determine whether there is a national pattern of governmental abuse of the subpoena process to interfere with the professional relationship between targets of grand jury investigations and their attorneys.

■ We need not consider whether in some circumstances a suspect's right to counsel may be impaired by requiring the attorney to produce evidence or a hearing may be required to protect against such impairment. We are satisfied that appellant's relationship with his counsel was not threatened and no hearing was required on the record made in this case.

The government stipulated that counsel need produce only the date, amount, and form of payment, and that this evidence could be delivered to the United States

---

1. *Harvey* rested entirely upon *Schofield.* We disapproved of *Schofield* in *In re Grand Jury* *(Hergenroeder),* 555 F.2d 686 (9th Cir.1977).

Attorney informally without the necessity for an appearance before the grand jury. The information required was so distinct from any confidential communication between appellant and his counsel and so clearly unprotected by the attorney-client privilege that no reasonably informed client could have supposed that it would be protected from disclosure. Since the attorney was not required to testify before the grand jury, this possible source of client concern was also eliminated. Moreover, the government established by uncontradicted affidavits that the evidence was sought for a legitimate purpose, that it was relevant to the grand jury inquiry, and that it was not available from another source, thus establishing all appellant suggests the government should be required to show in a preliminary hearing. The hearing suggested by amici would also have been inappropriate since whether or not there is a pattern of abuse nationwide, this case was clearly not an example.[2]

AFFIRMED.

---

**2.** This record supports the wisdom of the suggestion in *Salas & Waxman,* 695 F.2d at 363, that allegations such as those raised by amici are best resolved, not by a generalized inquiry, but by examination of the facts of each case in which the government seeks to compel counsel to produce evidence to determine whether there has been an abuse.