**Gordon HUECK and John F. Davis, Attorney, Appellants– Defendants,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A010–9106–CR–184.**

Court of Appeals of Indiana, First District.

April 14, 1992.

Rehearing Denied June 1, 1992.

---

Stuart T. Bench, Bench Law Office, Indianapolis, for Gordon Hueck.

Robert Canada, Evansville, for John F. Davis.

Linley E. Pearson, Atty. Gen. of Indiana, Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for the State.

## STATEMENT OF THE CASE

RATLIFF, Chief Judge.

Gordon Hueck ("Hueck") and John F. Davis ("Davis") appeal from an order denying attorney Davis's motion to quash a subpoena issued to him to testify against Hueck in a criminal case charging Hueck with Dealing in a Schedule II Controlled Substance,[1] a Class B felony; and Conspir-

1. IND.CODE § 35–48–4–2.

acy to Deliver a Schedule II Controlled Substance,[2] a Class B felony. We affirm.

## ISSUE

Does the attorney-client privilege prevent Davis from disclosing the identity of a third party fee payer?

## FACTS

Attorney Davis represented Phillip Johnson ("Johnson") in Vanderburgh Circuit Court, cause number 6756. The attorney fees for Johnson were paid by a third party. In a subsequent grand jury investigation, Johnson testified that Hueck had paid his attorney fees to Davis. Johnson also signed a limited waiver as to his attorney-client privilege with respect to his representation by Davis. Record at 197.

On December 14, 1990, a grand jury subpoena and a grand jury subpoena duces tecum were issued ordering attorney Davis to appear before the grand jury on December 18, 1990. Davis was to provide testimony and documents regarding the amount and source of attorney fees paid to him to represent Johnson. Davis filed a motion to quash the subpoenas contending that the attorney-client privilege prevented him from testifying. An *in camera* hearing was held on the motion to quash the subpoenas on December 19, 1990. The court accepted affidavits from Davis and Hueck and the State questioned Davis. On January 13, 1991, Hueck filed a third party petition to intervene. The petition to intervene was granted at a second *in camera* hearing held on January 18, 1991. At the second hearing, it was decided that the subpoenas would apply to depositions and trial as well as the grand jury proceedings.[3]

On December 17, 1990, Hueck was indicted on various charges. Davis received two additional subpoenas: one to testify at a deposition and the other at trial in the case of *State of Indiana v. Gordon Hueck*,

cause numbers 8542 and 8545. On April 2, 1991, Davis filed a motion to quash the subpoenas. A third count was filed against Hueck on May 3, 1991. Count three (3) of the indictment charged Hueck with conspiracy to deliver a Schedule II controlled substance. One of the overt acts alleged to support count three (3) was that on or about April or May 1988, Hueck paid attorney Davis to represent Johnson. Davis filed another motion to quash on May 10, 1991.

On May 16, 1991, the trial court entered findings of fact and conclusions of law and denied Davis's motions to quash the subpoenas. Davis filed a petition to certify the interlocutory order for appeal. We accepted jurisdiction on October 7, 1991.

## DISCUSSION AND DECISION

Davis does not contend that his relationship with Johnson would prevent him from revealing the identity of the third party fee payer. Rather, Davis contends that his relationship with the third party fee payer constitutes an attorney-client relationship which precludes Davis from revealing the identity of the third party.

The attorney-client privilege applies in proceedings in which an attorney "... may be called as a witness or otherwise required to produce evidence concerning a client." Ind. Professional Conduct Rule 1.6. In addition, IND.CODE § 34–1–14–5 states that "[t]he following persons shall not be competent witnesses: Third. Attorneys, as to confidential communication made to them in the course of their professional business, and to advice given in such cases." The attorney-client privilege establishes a provision for a person to give complete and confidential information to an attorney, so the attorney may be fully advised in his services to this client. *Colman v. Heidenreich* (1978), 269 Ind. 419, 422, 381 N.E.2d 866, 868. At the same time it assures the client that the confidences will

---

**2.** IND.CODE §§ 35–48–4–2 & 35–41–5–2.

**3.** The grand jury has since returned a three count indictment against Gordon Hueck; how-

ever, the grand jury subpoenas have not been withdrawn.

not be revealed. *Id.* However, it has been cautioned that since the privilege prevents the disclosure of relevant information and impedes the quest for the truth, the privilege should be narrowly construed. *In re Shargel* (2d Cir.1984), 742 F.2d 61, 62; *In re Special, September 1983, Grand Jury (Klein)* (S.D.Ind.1985), 608 F.Supp. 538, 542, *aff'd,* 776 F.2d 628; *accord Fisher v. United States* (1976), 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39, 51.

■ The privilege provides " 'that when an attorney is consulted on business within the scope of his profession, the communications on the subject between him and his client should be treated as confidential.' " *Colman,* 269 Ind. at 423, 381 N.E.2d at 869, (quoting *Jenkinson v. State* (1840), 5 Blackf. 465, 466). The privilege applies to all communications to an attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities. *Id.*

Davis contends that the attorney-client privilege prevents him from revealing the third party's identity because at the time of the payment of fees, the third party sought legal advice and confidential communications were revealed. Thus, to reveal the third party's identity or the fee arrangement would be to reveal the substance of the confidential communications. State counters that no attorney-client privilege existed between Davis and the third party.

A trial court's decision to grant or deny a motion to quash a subpoena will be reviewed for an abuse of discretion. *In re Grand Jury Subpoenas (Hirsch)* (9th Cir. 1986), 803 F.2d 493, 496; *In re Grand Jury Subpoena for Reyes–Requena [I]* (5th Cir. 1990), 913 F.2d 1118, 1122, *cert. denied,* —— U.S. ——, 111 S.Ct. 1581, 113 L.Ed.2d 646. It is the burden of the person asserting the privilege to show an attorney-client relationship exists, and that a confidential communication is involved. *Colman,* 269 Ind. at 423, 381 N.E.2d at 869. Here, Davis was hired to represent Johnson. At least two of the three attorney's fee payments to Davis were made by the third party. In an affidavit for *in camera* examination, Davis stated that at the time

the third party hired him and paid the attorney fees on behalf of Johnson, Davis believed that the transactions were confidential. Record at 58. However, Davis was not certain whether he related to the third party that he believed the payment of the fees was confidential and privileged. Record at 59. Moreover, Davis explained to the third party that if there was a conflict of interest between Johnson and the third party, his first responsibility would be to Johnson. Record at 59.

■ In an affidavit in support of the motion to quash, the third party alleged that he had sought Davis's advice regarding the delivery of money for Johnson's legal fees and discussed harassment by law enforcement officers and other matters. Record at 80. Further, the third party stated that Davis advised him that the attorney-client privilege prevented Davis from disclosing delivery of the fees. Record at 80. Neither affidavit revealed that the third party fee payer sought aid or advice for the matter in which the fee was paid. Davis's mistaken assertion that the attorney-client privilege prevented him from revealing the identity of a third party fee payer is not enough. Nor is the third party's bare assertion that he sought advice regarding the delivery of attorney fees. The attorney-client relationship does not exist where its only purpose is to gain confidentiality for the third party or to use the attorney as a mere conduit for the payment of money. *In re Grand Jury Subpoenas (Hirsch),* 803 F.2d at 499. It could be inferred from the evidence that the relationship between Davis and the third party was as payer-payee and not attorney-client. The trial court did not err in concluding that no attorney-client relationship existed, since the third party fee payer has not sustained his burden. *See, In re Grand Jury Proceedings (Pavlick)* (5th Cir.1982), 680 F.2d 1026, 1029 (Rubin, J. joined by Clark, J. and Randall, J., concurring in result) (even if fee payer sought legal advice and became attorney's client in regard to some matters, that did not establish he was attorney's client for the matters for which the fee was paid).

■ Assuming arguendo that an attorney-client relationship existed between Davis and the third party, it is still necessary to establish that the communications were privileged. Davis argues that identifying the third party payer or the fee arrangement violates the attorney-client privilege because the third party sought legal advice and confidential communications were revealed at the time of the payment of the fees.

■ As a general rule, information regarding a client's attorney fees is not protected by the attorney-client privilege because the payment of fees is not considered a confidential communication between attorney and client. *Matter of Witness Before Special March 1980 Grand Jury* (7th Cir.1984), 729 F.2d 489, 491. Likewise, the identification of a client is not usually considered privileged information. *Colman*, 269 Ind. at 427, 381 N.E.2d at 871.

■ As Davis and the third party correctly point out, courts have developed an exception to the general rule. Identity or fee arrangements may be privileged where revealing the third party's identity or the fee arrangement would be tantamount to the disclosure of a confidential communication.[4] *Matter of Witnesses Before Special March 1980 Grand Jury*, 729 F.2d at 491–95 (discussion of other circuits in agreement); *see also, Colman*, 269 Ind. at 427–28, 381 N.E.2d at 871 (client's identity would be privileged where so much has been divulged with regard to legal services rendered or the advice sought that to reveal client's name would be to disclose whole relationship and confidential communications). Whether client's identity or fee arrangement is privileged depends on the facts of each case. *In re Grand Jury Proceedings (Jones)* (5th Cir.1975), 517

F.2d 666, 668; *see also, Colman*, 269 Ind. at 427–28, 381 N.E.2d at 871 (client's identity). Further, whether the information sought is a privileged communication does not depend on whether the disclosure of the information has incriminated the client. *Matter of Witnesses Before Special March 1980 Grand Jury*, 729 F.2d at 493.

Davis and the third party contend that the fact situations in *Matter of Grand Jury Proceedings, Cherney* (7th Cir.1990), 898 F.2d 565, and *In re Grand Jury Subpoena, Reyes–Requena [II]* (5th Cir.1991), 926 F.2d 1423, are similar to the case at bar, and thus, dispositive. We disagree. In both *Cherney* and *Reyes–Requena [II]* the courts found that there was an attorney-client relationship with the third party prior to the time the subpoenas were issued. Moreover, in both cases the district court found and the circuit court affirmed that *in camera* documents submitted were sufficient to establish that the fee payer sought legal advice from the attorney regarding the potential criminal charges. As explained in *Reyes–Requena [II]*, the attorney could claim the privilege for the third party only by demonstrating a connection between the client's attorney's fees and the confidential purpose for which the third party sought the attorney's legal advice. *Id.*, at 1433. The attorney can demonstrate this connection only by revealing that the third party consulted him concerning the very matter for which the client had been charged. *Id.* It is also important to note that in both *Cherney* and *Reyes–Requena [II]* the identity of the third party was unknown; here, however, Johnson has revealed that he was told by Hueck that Hueck would "take care" of his attorney fees. Record at 176. " 'Information of a known client's fees appears far less likely

---

**4.** A few cases refer to the exception as applying when disclosure would result in implicating the client in the very criminal activity for which he sought legal advice. *E.g., United States v. Hodge & Zweig* (9th Cir.1977) 548 F.2d 1347, 1353; *but see e.g., In re Osterhoudt* (9th Cir.1983) 722 F.2d 591, 593 (criticizing *Hodge & Zweig* for formulating exception not in terms of principle itself but rather in terms of an example where exception is likely to apply). The third party incorrectly cites this as a second exception to the

general rule. Similarly, in a few cases, *see Pavlick*, 680 F.2d at 1027 and *Jones*, 517 F.2d at 672, the courts have applied the last link exception. The exception to the general rule applies when the disclosure of the client's identity would supply the last link in the chain of incriminating evidence that is likely to lead to the client's indictment. *Pavlick*, 680 F.2d at 1027. This narrow interpretation of the exception does not apply to this case because Hueck has already been indicted.

**586**

to reveal a confidential communication than would revelation of an unknown client's identity.'" *Cherney,* 898 F.2d at 568.

In the case at bar, the trial court correctly found that the information regarding the third party's identity and the fee arrangement would not disclose a confidential communication. Davis's affidavit does not allege that the third party sought advice concerning the third party's rights and liabilities regarding the matter which Johnson was charged; but rather, the "... transactions of paying [Davis] were confidential." Record at 59. Likewise, the third party's affidavit states that he sought legal advice regarding the delivery of legal fees for Johnson. Record at 79. The third party also makes a broad allegation that he discussed other confidential matters with Davis. *Id.* The third party has failed to meet his burden of showing that disclosure of his identity or the fee arrangement would convey a confidential communication. Moreover, the information sought by the subpoenas was merely the source and the amount of fees paid to Davis. This limited request of information does not constitute a confidential communication. Davis and the third party simply assert unsupported conclusions, but they have not presented any facts to this court or in the *in camera* affidavits to meet their burden of establishing that the requested information comes within the privilege. *See Hirsch,* 803 F.2d at 497–98 (affidavits did not show fee-payer sought personal legal advice in connection with any underlying drug conspiracy case where one lawyer's affidavit stated that the third party and attorney had an ongoing relationship and the other's stated he and the third party discussed various matters); *In re Osterhoudt* (9th Cir.1983), 722 F.2d 591, 594 (substance of confidential communications would not be revealed by disclosure of amounts and dates of payments); *cf. Reyes–Requena [I],* 913 F.2d at 1126 (client referred to in assertion of attorney-client privilege was the client for whom attorney's fees were paid). The attorney-client privilege protects a client's identity only in limited circumstances where disclosure would convey the substance of a confidential communication. We find that the trial court did not abuse its discretion in refusing to quash the subpoenas.

Davis also argues that the subpoenas are oppressive and unreasonable because the information sought is cumulative of Johnson's grand jury testimony. We do not agree. Information is not necessarily oppressive or unreasonable because similar evidence can be gleaned from another source. *See Stone v. State* (1989), Ind. App., 536 N.E.2d 534, 537, *trans. denied* (relevant evidence will not be rejected simply because it is cumulative unless it creates undue prejudice, such as a parade of witnesses offering consistent testimony).

Finally, Davis and the third party contend that Hueck reasonably believed that his identity and the fee arrangement would be confidential, therefore, the attorney-client privilege should apply. They rely on *Smale v. United States* (7th Cir.1924), 3 F.2d 101, to support their position. In *Smale,* the Seventh Circuit stated in dicta that statements made under an erroneous impression that an attorney-client relationship exists should be protected. *Id.,* at 102. *Smale* is fundamentally different from the case at bar in two respects. First, in *Smale* the court was referring to a situation where a confidential communication was made. Second, in the *Smale* exception the client had a good faith but erroneous belief that he was hiring the attorney to provide representation. The rationale for applying *Smale* does not exist here because no confidential communication was ever made by the third party to Davis. Moreover, the information requested in the subpoenas is not a disclosure necessary to obtaining informed legal advice, which the attorney-client privilege seeks to protect. *See Fisher,* 425 U.S. at 403, 96 S.Ct. at 1577, 48 L.Ed.2d at 51. We find that the trial court did not abuse its discretion in refusing to quash the subpoenas issued to Davis.

*Affirmed.*

ROBERTSON, J., concurs.

HOFFMAN, J., dissents with separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent. The affidavits of both Davis and Hueck state that a discussion was had on whether the payment of fees for the representation of another party was confidential. Davis avers that he "conveyed the message or impression to TPC [Hueck] that the transactions of his paying me these fees were confidential," and Hueck states that Davis advised that the payment of fees would be confidential. Based on that information, Hueck provided payment for legal services.

Indiana's statute on incompetent witnesses specifically provides that attorneys shall not be competent witnesses "as to confidential communications made to them in the course of their professional business, and as to advice given in such cases." IND.CODE § 34–1–14–5 (1991 Supp.) Similarly, Indiana case law has long held "that when an attorney is consulted on business within the scope of his profession, the communications on the subject between him and his client should be treated as strictly confidential."

*Colman v. Heidenreich* (1978), 269 Ind. 419, 423, 381 N.E.2d 866, 869;

*Jenkinson v. State* (1840), 5 Blackf. 465, 466;

*Borum v. Fouts* (1860), 15 Ind. 50.

Hueck requested legal advice from Davis regarding the confidentiality of paying legal fees for another person. Davis provided this legal advice in the course of his professional business. Subsequently, Hueck paid the legal fees. This whole transaction occurred as a part of the confidential and protected communications between Hueck and Davis.

Under the above analysis, the exception to the general rule in federal law that a third-party's identity or the fee arrangement would be tantamount to the disclosure of a confidential communication is applicable. *Matter of Witnesses Before Special March 1980 Grand Jury* (7th Cir. 1984), 729 F.2d 489. Certainly, Hueck's identity and fee arrangement with Davis were the confidential communications be-

tween the parties and as such, are protected. Therefore, the subpoenas issued to Davis should be quashed.