REGINALD MARTIN AGENCY, INC., Comprehensive Insurance Marketing, Inc., Design Benefits, Inc., Jim Jasnoski, Design Benefits, Inc., Kenny Froug, Atlanta Brokerage Office, Brokerage One Agency, Inc., Tri–State Brokerage, Inc., Don Sepulveda, Sepulveda Insurance Group, Dean Vandersnick, Professional Insurance Brokerage, Whitewater Brokerage, Inc., Professional Insurance Brokerage, Inc., Plaintiffs,

v.

CONSECO MEDICAL INSURANCE COMPANY, Conseco Marketing, LLC, Timothy F. O'Keefe, Edward N. Berube, Washington National Insurance Company, Defendants.

No. 1:04–cv–01587–TAB–RLY.

United States District Court, S.D. Indiana, Indianapolis Division.

March 31, 2006.

Mark Van Spix, Spencer J. Krupp, Spix & Krupp, Lawrence Lee Bennett, Jr., Atlanta, GA, Kristopher N. Kazmierczak, Offer Korin, Sally F. Zweig, Katz & Korin, Indianapolis, IN, for Plaintiffs.

David Brian O'Dell, Edward Devereaux Cotter, Gary Lane Howard, Jamie Lee Moore, Paul Peter Bolus, Burr & Forman LLP, Birmingham, AL, Scott A. Weathers, Huffer & Weathers, Indianapolis, IN, for Defendants.

## ORDER ON DEFENDANTS' MOTION TO COMPEL

BAKER, United States Magistrate Judge.

### I. Introduction.

The instant discovery dispute raises separate issues regarding the common interest doctrine and the extent to which information provided to a non-testifying expert is discoverable. The dispute arose during the depositions of six named Plaintiffs. During each deposition, Defendants Conseco Medical Insurance Company and Washington National Insurance Company[1] attempted to inquire into: (1) conversations between Plaintiffs made outside the presence of their counsel; and (2) conversations between Plaintiffs and Douglas Singleton, a non-testifying expert mathematician retained by Plaintiffs' counsel to assess damages. Plaintiffs' counsel instructed each deposed Plaintiff not to answer questions regarding these lines of inquiry.

Defendants responded by filing a motion to compel. [Docket No. 73.] Defendants contend in their motion that the common interest doctrine is inapplicable and that all communications between Plaintiffs and Singleton are discoverable. Plaintiffs counter that the common interest doctrine extends attorney-client privilege and work product protections to conversations between Plaintiffs made after they obtained counsel, even if those conversations occurred outside of counsel's presence. [Docket No. 74, pp. 15–22.] Plaintiffs further assert that the Federal Rules of Civil Procedure and the attorney-client privilege explicitly protect conversations between Plaintiffs and Singleton. [Id., pp. 23–24.] For the reasons set forth below, Defendants' motion to compel is denied.[2]

### II. Discussion.

#### A. Common interest doctrine.

■ Plaintiffs' objections to Defendants' attempts to inquire into conversations among the Plaintiffs are premised on the attorney-client privilege and the work product doctrine. Plaintiffs argue that the common interest doctrine extends these discovery protections to these conversations. [Id. at 16.] Defendants contend that Plaintiffs "improperly asserted a blanket privilege over all communications that took place between the Plaintiffs" and that the common interest doctrine does not apply to conversations among parties made outside the presence of counsel. [Docket No. 73, pp. 4–8.] The parties concur that in a diversity case such as this, Indiana law controls claims of attorney-client privilege while federal law dictates the parameters of the work product doctrine. [Docket Nos. 73, 75.]

■ As a preliminary matter, it bears emphasizing that the common interest doctrine "is not an independent source of confidentiality." *BASF Aktiengesellschaft v. Reilly Industries, Inc.*, 224 F.R.D. 438, 440 (S.D.Ind.2004) (*quoting McNally Tunneling Corp. v. City of Evanston*, 2001 WL 1246630 at *2 (N.D.Ill.2001)). Rather, it is an exception to the general principle that

---

1. For the purpose of this order, "Conseco" refers to Conseco Medical Insurance Company, "WNIC" refers to the Washington National Insurance Company, and "Defendants" refers to both collectively.

2. The parties quarrel in their briefs as to whether this discovery issue has been properly presented to the Court. Defendants contend that Plaintiffs were required to move for a protective order. [Docket No. 73, p. 11.] Plaintiffs deny this and counter that the Defendants failed to submit a separate statement certifying that Defendants' counsel made a reasonable effort to reach agreement with Plaintiffs on this matter as required by Local Rule 37.1. The Court will not delve into this preliminary skirmish, and instead opts to address the merits of the actual dispute.

disclosure of confidential, privileged information to third parties waives any applicable privilege. *Allendale Mutual Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 140 (N.D.Ill.1993). It "recognizes protection of communications among clients and attorneys 'allied in a common legal cause.'" *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D.Ill.2000) (*quoting Regents of University of California*, 101 F.3d 1386, 1389 (Fed.Cir.1996)).[3]

With this in mind, the Court notes that it addressed the common interest doctrine in the work product context in *BASF v. Reilly Industries*. In *BASF*, the Court first addressed whether a letter prepared by a party's non-lawyer employee to a non-party customer seeking information for use in the lawsuit was protected work product. Concluding that it was, the Court next considered whether the letter was excepted from waiver by virtue of the common interest doctrine. In holding that there was no waiver, the Court stated, "Accordingly, waiver would not occur if disclosure of otherwise protected work product was made to a third party with a common legal interest or would not otherwise substantially increase the ability of an adversary to gain the information." *BASF*, 224 F.R.D. at 442. Thus, this Court has already recognized the applicability of the common interest doctrine in the work product context, and Defendants have presented no compelling reason to depart from this holding.[4]

The more interesting issue is whether the common interest doctrine applies in the context of the attorney-client privilege. A party asserting the attorney-client privilege pursuant to Indiana law must establish that: (1) an attorney-client relationship existed; and (2) a confidential communication was involved. *Shanabarger v. State*, 798 N.E.2d 210, 215 (Ind.Ct. App.2004). Because the "privilege prevents the disclosure of relevant information and impedes the quest for truth," the privilege should be narrowly construed. *Id.* Defendants urge this Court to adopt those cases that appear to stand for the proposition that the common interest doctrine does not extend attorney-client privilege to communications between parties made outside the presence of counsel. While such a conclusion is tempting on first blush, closer scrutiny suggests otherwise.

For example, *Harper–Wyman Co. v. Connecticut General Life Insurance Co.*, 1991 WL 62510 at *6 (N.D.Ill.1991), cited by Defendants in their opening brief and in reply, followed *Schachar v. American Academy of Ophthalmology, Inc.*, 106 F.R.D. 187, 192 (N.D.Ind.1985), to conclude that communications between an insurance company defendant and a non-party insurance company were discoverable.

But *Schachar* held narrowly only that conversations between co-plaintiffs outside the presence of counsel and concerning

---

**3.** Defendants direct the Court's attention to three Indiana cases in support of their contention that Indiana's use of the common interest doctrine is limited to defamation and libel cases. However, the privilege addressed by each Indiana court cited by Defendants is a qualified privilege from liability and not a discovery privilege. Consequently, these cases do not support Defendants' position.

**4.** A different result is not warranted here simply because the communications at issue are verbal, and the Court rejects Defendants' suggestion that verbal communications be excluded from work product. Consistent with the work product doctrine's purpose, applicability does not hinge on the mode of disclosure. Rather "the question is whether the disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'" *BASF*, 224 F.R.D. at 442 (citations omitted).

another similar yet unrelated case were unprotected by any "joint privilege." *Id.* Moreover, the holding in *Schachar* was set forth without explanation, as noted in *IBJ Whitehall Bank & Trust Co. v. Cory & Associates,* 1999 WL 617842 at *6 (N.D.Ill. 1999). The *IBJ Whitehall Bank* court concluded that the holding in *Schachar* was not persuasive, and stated that the sharing of counsel's advice among parties does not waive any privilege. *IBJ Whitehall Bank,* 1999 WL 617842 at *6.

Another case cited by Defendants, *Edward Lowe Industries, Inc. v. Oil–Dri Corp. of Am.,* 1995 WL 410979 at *2 (N.D.Ill.1995), distanced itself from *Schachar.* Despite attributing a general lack of protection for communications made outside the presence of counsel to *Schachar,* the court held that the common interest doctrine *insulated* from disclosure co-party communications made outside the presence of counsel in the form of a letter conveying one party's attorney's opinions for evaluation by the other party's counsel. *Id.* This court's findings actually bolster Plaintiffs' arguments. Notably, these cases do not discuss attorney-client privilege under Indiana law.

Indiana law recognizes the application of the common interest doctrine at least where individuals with a common interest meet in the presence of an attorney. *Corll v. Edward D. Jones & Co.,* 646 N.E.2d 721, 725 (Ind.Ct.App.1995); *see also Draus v. Healthtrust, Inc.,* 172 F.R.D. 384, 391 (S.D.Ind.1997) ("Indiana courts appear to recognize the extension of the attorney-client and work product privileges to communications within a community of legal interest in the context of potential litigation."). Defendants have not directed the Court's attention to any instances where an Indiana court has foreclosed the application to communications among parties made outside counsel's presence.

In fact, case law suggests that the common interest doctrine may apply in such circumstances. "The [attorney-client] privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.' " *Lahr v. State,* 731 N.E.2d 479, 482 (Ind.Ct. App.2000), quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Similar to work product, "[t]he harm to be prevented is not the manner in which the confidence is revealed, but the revelation itself." *Id.* As such, Indiana deems communications between clients and agents of the client's attorney and communications between the client's and attorney's agents privileged. *Brown v. State,* 448 N.E.2d 10, 14 (Ind. 1983).

Although not invoking the phrase "common interest," Judge Lee in *Roberts v. Carrier Corp.,* 107 F.R.D. 678, 686–88 (N.D.Ind.1985), deemed that otherwise attorney-client privileged communications disclosed by a defendant corporation to a non-party subsidiary that shared a similar legal interest were not discoverable. In fact, the court commented that had the non-party subsidiary been a party, the disclosed communications made outside the presence of counsel would have enjoyed an even stronger protection. *Id.* at 688 n. 6. Taken together, these cases support application of the common interest doctrine here. Thus, the Court agrees with the Plaintiffs that the common interest doctrine may prevent waiver of otherwise attorney-client privileged communications among these Plaintiffs even when counsel was not present.

The question, then, is one of scope. While the Court rejects the Defendants' contention that the common interest doctrine is wholly inapplicable, the Court can-

not agree with Plaintiffs that *any* communications among themselves—even those outside the presence of counsel—are protected so long as such conversations are "concerning this lawsuit." [Docket No. 74, p. 22.] While conversations concerning this lawsuit among Plaintiffs conducted in the presence of counsel would be protected,[5] the same is not necessarily true regarding conversations that occurred outside of counsel's presence. For such conversations to be protected, they would need to not only concern the lawsuit, but also implicate counsel's legal advice or mental impressions.

By way of example, if outside of counsel's presence Plaintiffs discussed their counsel's advice on how to make a good impression on the jury during trial, where a witness might be vulnerable on cross examination, or counsel's impressions of the strength of Plaintiffs' damages claims, such statements among the Plaintiffs would be protected. This is so because such statements involve counsel's advice and/or mental impressions. However, if outside of counsel's presence the Plaintiffs were discussing their *personal views* concerning how they should conduct themselves in the courtroom, the credibility of witnesses, or the amount of damages that might be awarded, such statements among the Plaintiffs would not be protected. This is so because such statements do not involve counsel's legal advice or mental impressions. Rather, such statements involve Plaintiffs' personal views and opinions. Such personal views and opinions are certainly "concerning this lawsuit." [Docket No. 74, p. 22.] But to hold that

such conversations are off limits, as Plaintiffs suggest, stretches too far.

■ The problem for the Defendants is that the deposition questions at issue are exceedingly broad. After learning that the Plaintiffs discussed the lawsuit outside of their counsel's presence, the Defendants interposed deposition questions to the Plaintiffs such as, "What did you talk about?"; "What did you discuss?"; and "What was the substance of those conversations?"[6] Such broad questions invite the Plaintiffs to share with the Defendants the legal advice and mental impressions of their counsel. Indeed, the Court questions the usefulness of this entire line of questioning. Such questions suggest counsel's inquiry is little more than the type of fishing expedition that contributed to the need to limit the length of depositions. *See* Fed.R.Civ.P. 30(d). Questions such as these are dangled before the deponent with the hope that the deponent might say something damaging—or at least interesting. The Defendants would be well advised to simply abandon this line of inquiry and focus on establishing facts relevant to the claims and defenses at issue in the litigation. *See* Fed.R.Civ.P. 26(b)(1). Whatever line of questioning is pursued, however, must be done in compliance with the limitations set forth above. Accordingly, the Court denies Defendants' motion to compel Plaintiffs' testimony regarding their conversations about this lawsuit made outside of counsel's presence.

## B. Plaintiffs' conversations with Singleton.

During the deposition of James Jasnoski, Mark V. Spix, Plaintiffs' counsel, rep-

---

5. These protections may be lost by waiver. However, Defendants have not suggested any waiver occurred apart from issues addressed by way of this Court's discussion of the common interest doctrine.

6. These questions are merely representative of the types of questions asked, and are not exact quotes of the questions at issue. The relevant portions of the transcript, however, reveal that these questions accurately represent the substance of the disputed questions. [*See* Docket No. 74, pp. 2–10.]

resented that Singleton is a non-testifying expert who Spix's firm hired to compute damages for Plaintiffs' counsel. [Docket No. 74, p. 11.] He further explained that counsel directed Singleton to obtain information necessary for his calculations from Plaintiffs. [*Id.*] As such, Plaintiffs first contend that Fed.R.Civ.P. 26(b)(4)(B) protects from discovery the substance of any conversations between Singleton and the Plaintiffs he spoke to at counsel's direction because Defendants cannot make a showing of exceptional circumstances. In the alternative, Plaintiffs argue that the conversations between Singleton and Plaintiffs are attorney-client privileged. Defendants do not challenge these arguments. [Docket No. 75.]

■ In light of Defendants' implicit concession, and the Court having found some of Plaintiffs' arguments persuasive, the Court denies Defendants' motion to compel Plaintiffs' testimony about their lawsuit-related conversations with Singleton. Singleton was hired by Plaintiffs' counsel to assess and calculate damages. Plaintiffs do not intend to call him as a witness at trial. Thus, he is properly characterized as a non-testifying expert. Rule 26(b)(4)(B) permits the disclosure of facts known or opinions held by a non-testifying expert only after the party seeking disclosure has demonstrated an exceptional circumstance where it is impracticable to obtain such information by other means. Defendants have not made such a showing.

■ However, Rule 26(b)(4)(B) does not preclude discovery of "documents or things consulted by the expert." *Terre Haute Warehousing Service, Inc. v. Grinnell Fire Protection Systems Co.,* 193 F.R.D. 561, 566 (S.D.Ind.1999). But Plaintiffs also object to disclosure of any inquiry into conversations between Plaintiffs and Singleton on the basis of attorney-client privilege. In fact, communications between a client and the client's attorney's agent are privi-

leged from discovery "as long as 1) the communication involves the subject matter about which the attorney was consulted; and 2) the agent was retained by the attorney for the purpose of assisting the attorney in rendering legal advice to or conducting litigation on behalf of the client." *Witham Memorial Hospital v. Honan,* 706 N.E.2d 1087, 1090–91 (Ind.Ct.App.1999). In this case, both prongs are met because the communications sought by Defendants concern the information solicited from Plaintiffs by Singleton, and Plaintiffs' counsel hired Singleton to assess damages. Consequently, the Court denies Defendants' motion to compel Plaintiffs' testimony regarding their conversations with Singleton.

### III.  Conclusion.

The common interest doctrine applies to Plaintiffs' claims of work product and attorney-client privilege. Consequently, the Court sustains Plaintiffs' objections to broad questions regarding the substance of conversations between Plaintiffs made outside the presence of counsel. The Court likewise sustains Plaintiffs' objections to Defendants' questions concerning Plaintiffs' conversations with Singleton related to the lawsuit. Accordingly, for the reasons more fully set forth above, Defendants' motion to compel [Docket No. 73] is denied.